**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-CV-01805-MSK-CBS

CARL L. and JESSICA A. WILLIAMS,

      Plaintiffs,

v.

BAC HOME LOANS SERVICING, LP,

      Defendant.

---

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO
FED.R.CIV.P. 12(b)(6)**

---

      Defendant BAC Home Loans Servicing, LP ("BAC") respectfully submits this brief containing the argument and discussion in support of its Motion to Dismiss the Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## INTRODUCTION

      On October 27, 2006, Plaintiffs Carl L. Williams ("Mr. Williams") and Jessica A. Williams ("Ms. Williams") borrowed money to buy property located at 2364 Xanthia Way, Denver, Colorado 80238 (the "Property").  The terms of the loan for the principal sum of $283,729.00 were memorialized in a promissory note and secured by a deed of trust.  The deed of trust was recorded with the Denver County Clerk and Recorder's Office on November 16, 2006 at Reception No. 2006185326.  The deed of trust granted the Public Trustee of Denver County with the power of sale.  BAC is the holder of the promissory note and is the beneficiary of the deed of trust.

Plaintiffs defaulted under the note by failing to pay their monthly installments of principal and interest.  Plaintiffs failed to cure their default.  In October 2009, BAC commenced a foreclosure action and obtained an order authorizing sale of the Property on November 25, 2009.  The Property has not sold—through a foreclosure sale or otherwise—and Plaintiffs continue to reside in and hold title to the Property.

Despite their continuing default under the note, Plaintiffs filed an Original Petition [Complaint][1] against BAC seeking damages for, among other things, alleged disclosure violations and for "acting in concert and collusion with others [to induce] Petitioner to enter into a predatory loan agreement with Defendant [through] numerous acts of fraud against Petitioner in further of a carefully crafted scheme intended to defraud Petitioner."  *See* Doc. 1, ¶¶17-23.  In its shotgun approach, the seemingly omnibus Complaint fails to state a claim.

Mr. Williams filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code on May 26, 2010.  As a result, Mr. Williams does not own any of the causes of action asserted in the Complaint filed on July 30, 2010.  Instead, all of Mr. Williams' causes of action are owned by the bankruptcy estate that was created—after the causes of action accrued—upon Mr. Williams' bankruptcy filing under Chapter 7 of the Bankruptcy Code on May 26, 2010.  Only the bankruptcy trustee has standing to assert Mr. Williams' causes of action, and Mr. Williams is not a proper party to this lawsuit.

---

[1] A copy of Plaintiffs' Complaint is located at Document 1 on the case docket.  This complaint appears to be a form complaint lifted from the internet and asserts generalized, difficult-to-follow allegations against unidentified entities.  Although BAC is the only named Defendant, the Complaint repeatedly refers to multiple Defendants, and at one point, argues that "the Motion to Dismiss should be denied."  *See* Doc. 1, p. 23 of 24, at ¶ 632.

Nevertheless, the causes of action, whether asserted by the bankruptcy trustee or by Ms. Williams, are all barred by the applicable statutes of limitation.  Further, the conclusory and unintelligible causes of action do not rise to the requisite level of plausibility.  The causes of action either fail to assert cognizable legal theories or lack sufficient facts to support cognizable legal theories.  Therefore, the Complaint should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

## ARGUMENT AND AUTHORITIES

The following argument and authorities support BAC's Motion:

**I.     Since the causes of action are property of the bankruptcy estate, Plaintiff Carl L. Williams is not a real party in interest under Fed. R. Civ. P. 17(a) and therefore lacks standing to prosecute the Causes of Action.**

Mr. Williams filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code on May 26, 2010.  Copies of Mr. Williams' bankruptcy petition and schedules are attached as Exhibit A.   Every action must be prosecuted in the name of the real party in interest.  Fed. R. Civ. P. 17(a).  To satisfy the "real party in interest" principle, only the party "possess[ing] the substantive right being asserted under applicable law" can prosecute the action.  *Esposito v. U.S.*, 368 F.3d 1271, 1273 (10th Cir. 2004).  And in a Chapter 7 bankruptcy case, only the bankruptcy trustee has standing to assert claims that are property of the bankruptcy estate.  *In re Enyedi*, 371 B.R. 327, 332 (N.D. Ill. 2007) (after the filing of a Chapter 7 petition "the trustee holds the **exclusive** right to pursue the debtor's pre-petition causes of actions") (emphasis in original) (citing *Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999)); Smith *v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008); *see also* 11 U.S.C. § 323(a), (b) (bankruptcy trustee is the representative of the estate having the capacity to sue and be sued).

The bankruptcy estate is defined as including "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1); *see also Chartschlaa v. Nationwide Mutual Ins. Co.*, 538 F.3d 116, 122 (2nd Cir. 2008) ("[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within reach of § 541." (internal citation omitted)).  Causes of action held by the debtor on or before the petition date clearly constitute property of the bankruptcy estate.  *Chartschlaa*, 538 F.3d at 122; *Enyedi*, 371 B.R. at 332.

Like the broad scope of 11 U.S.C. § 541, "the debtor's obligation to disclose *all* of his interests at the commencement of a case is equally broad."  *Chartschlaa*, 538 F.3d at 122 (emphasis in original).  A debtor is required to "file . . . a schedule of assets and liabilities . . . [and] a statement of the debtor's financial affairs."  11 U.S.C. § 521(a)(1)(B)(i), (iii).

> Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets:  While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, **undisclosed assets automatically remain property of the estate after the case is closed**.

*Chartschlaa*, 538 F.3d at 122 (emphasis added) (citing 11 U.S.C. § 554(c), (d)).  The debtor is not permitted to conceal assets during bankruptcy and then utilize them for his benefit after the termination of the bankruptcy case.  *Id*.  The United States Supreme Court has recognized this principle for more than 100 years.  *First Nat'l Bank of Jacksboro v. J. L. Lasater*, 196 U.S. 115 (1905).  In *Lasater*, the Supreme Court stated:

> It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up,

> immediately thereafter assert title to the property on the ground
> that the trustee had never taken any action with respect to it.

*Id.*

A trustee may abandon property that has been scheduled under 11 U.S.C. § 521(a)(1) after notice and a hearing, as provided by 11 U.S.C. § 554(a)-(b), or by failing to administer the property before the close of the case, as provided by 11 U.S.C. § 554 (c).  But "[a]n unscheduled asset is not abandoned by a trustee to a debtor when the case is closed."  *Enyedi*, 371 B.R. at 333.

Under the Bankruptcy Code, "[a]bandonment presupposes knowledge."  *Guaranty Residential Lending, Inc. v. Homestead Mortgage Co., L.L.C.*, 463 F.Supp.2d 651, 661 (E.D. Mich. 2007); 11 U.S.C. § 554 (c), (d).  It is therefore impossible for unscheduled property to be abandoned by operation of law.  *Id*.  Unscheduled, unabandoned, and unadministered property "remains with the estate, and therefore does not vest in the debtor, at the close of bankruptcy."  *Homestead Mortgage*, 463 F.Supp.2d at 661 (internal citation omitted); *see also Enyedi*, 371 B.R. at 334 ("pre-petition property of the Debtors that was never scheduled and administered by the Trustee prior to the closing of Debtors' case . . . remained property of the estate and never reverted back to the Debtors.").

Even assuming for the sake of argument that the Mr. Williams' causes of action accrued after the bankruptcy petition was filed, they are still property of the bankruptcy estate if they had "sufficient roots in the debtor's pre-bankruptcy activities and [are] not entangled with the debtor's 'fresh start,' regardless of when the [causes of action] accrue under state law."  *Fix v. First State Bank of Roscoe*, 559 F.3d 803, 809 (8th Cir. 2009) (quoting *In re Strada Design Assocs., Inc.*, 326 B.R. 229, 236 (2005)).  In *Fix*, certain causes of action arose prior to the plaintiff's filing of the bankruptcy petition, but did not accrue until after the plaintiff received a

discharge under Chapter 7. *Id.* Since pre-bankruptcy activities were sufficiently rooted in the causes of action, and were not related to the fresh start received by the plaintiff's discharge of debts in bankruptcy, the causes of action were properly part of the bankruptcy estate, and did not belong to the plaintiff. *Id.*

Here, the causes of action asserted by Mr. Williams are all pre-bankruptcy petition claims. The allegations in the Complaint demonstrate that the causes of action all accrued as of October 27, 2006, when Plaintiffs closed on the loan transaction at issue. *See e.g.* Doc. 1, ¶¶ 15-23. 163-66, 173-75, 252-62, 264-65, 271-72, 315-16, 339-47, 362-66, 368-75; *see* <u>Exhibit A</u>,[2] at Schedule F (p. 24 of 32) (showing date of closing); *see also* Deed of Trust, <u>Exhibit B</u> (dated October 27, 2006); *see also* C.R.S. § 13-80-108 ("a cause of action . . . shall be considered to accrue on the date that both the injury and its cause are known or should have been known by the exercise of reasonable diligence"). Mr. Williams alleges that BAC and others conspired to induce him and Ms. Williams to consummate a loan transaction that they could not afford, and that they first suffered damages at closing. *See e.g.* Doc. 1, ¶¶ 15-23. As a result, the alleged improper actions and inactions performed by BAC and others occurred pre-closing, and Plaintiffs suffered their alleged injury at closing due to being "charged false fees . . . at

---

[2] BAC requests that the Court take judicial notice of <u>Exhibits A – C</u> under Fed. R. Evid. 201 because these documents are not subject to a reasonable dispute. The documents identified as <u>Exhibits A – C</u> were filed in the United States Bankruptcy Court for the District of Colorado, or were recorded with the Clerk and Recorder's Office in Denver County, and are capable of accurate and ready determination by the Court through resort to the bankruptcy case docket or to publicly recorded documents maintained by the Denver County Clerk and Recorder's Office. The accuracy and authenticity of these documents cannot reasonably be questioned. Further, the Deed of Trust, identified as <u>Exhibit B</u>, is part of the loan documents referenced in Plaintiffs' Complaint and central to their claims. Therefore, the Court may consider the Deed of Trust without converting the Motion to a motion for summary judgment. *Praeger v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999).

settlement." Doc. 1, ¶ 23.  Therefore, and through the exercise of reasonable diligence, Plaintiffs knew or should have known about their alleged injury and its cause at the time of the closing on October 27, 2006.

Mr. Williams filed his Chapter 7 bankruptcy petition on May 26, 2010.  *See* <u>Exhibit A</u>. But the causes of action were not listed in his schedule of assets as required by the Bankruptcy Code.  *See* <u>Exhibit A</u>, Schedule B, subsection 21 (p. 16 of 32).  And the trustee's report entered on July 1, 2010 indicated that Mr. William's bankruptcy estate has been fully administered.  *See* <u>Exhibit C</u>, Bankruptcy docket, at entry dated July 1, 2010.  Therefore, the unscheduled and unadministered causes of action were not abandoned, still remain property of the bankruptcy estate, and have never reverted back to Mr. Williams.  Accordingly, and pursuant to Fed. R. Civ. P. 17(a), Mr. Williams is not a real party in interest and has no standing to assert the causes of action.  For this reason alone, Mr. Williams' causes of action should be dismissed with prejudice.

## II.     The causes of action are barred by the applicable statutes of limitation.

As demonstrated above, Mr. Williams does not own the causes of action.  But whether these causes of action are pursued by the bankruptcy trustee[3] or Ms. Williams, they are time barred.

---

[3] A bankruptcy court has the power to reopen the bankruptcy to administer previously unadministered assets, *see* 11 U.S.C. § 350(b), and the bankruptcy trustee retains capacity to bring suit.  11 U.S.C. § 323(b).  And under the Bankruptcy Code—and if the applicable statutes of limitation have not expired before the date of the filing of the bankruptcy petition—the **bankruptcy trustee** is permitted to bring suit: (1) by the end of the applicable limitation period, or (2) two years after the order for relief, whichever is later.  *See* 11 U.S.C. § 108 (emphasis added).  Here, the applicable statutes of limitation all expired before Mr. Williams filed his bankruptcy petition.  Therefore, the bankruptcy trustee never had standing to assert these stale claims.

A.    <u>The causes of action</u>.

The causes of action listed in Plaintiffs' Complaint begin on page 20 and include: (1) breach of fiduciary duty, (2) negligence and negligence per se, (3) fraud, (4) breach of the implied covenant of good faith and fair dealing, (5) violation of the Truth in Lending Act ("TILA"), and (6) intentional infliction of emotional distress. *see* Doc. 1, pp. 20-24.

It is certainly not readily apparent from the face of the Complaint exactly what other causes of action have been pleaded, if any. After a very liberal reading of the Complaint, and affording Plaintiffs all benefits of doubt, Plaintiffs may also be asserting claims for: breach of contract, *see e.g.* Doc. 1, ¶ 165; unjust enrichment, *see e.g.* Doc. 1, ¶ 176; criminal conspiracy and theft, *see e.g.* Doc. 1, ¶¶ 174, 244; and violation of the Real Estate Settlement Procedures Act ("RESPA"), *see e.g.* Doc. 1, ¶¶ 338-342. Plaintiffs' other purported claims related to quiet title, *see e.g.* Doc. 1, ¶ 510; declaratory relief, *see e.g.* Doc. 1, ¶ 195; and rescission, *see e.g.* Doc. 1, ¶¶ 513, 670; are even more unintelligible than the above possibly asserted claims, and simply fail to meet the pleading standards.

B.    <u>The applicable statutes of limitation.</u>

Plaintiffs' causes of action for negligence, negligence per se, and intentional infliction of emotional distress "shall be commenced within two years after the cause of action accrues, and not thereafter." C.R.S. § 13-80-102(1)(a). Plaintiff's causes of action for criminal conspiracy and theft, breach of contract and the implied duty of good faith and fair dealing, breach of fiduciary duty, and fraud "shall be commenced within three years after the cause of action accrues, and not thereafter." C.R.S. § 13-80-101(1)(a), (c).

Plaintiffs' cause of action for RESPA violations must be commenced within three years for claims under § 2605, and within one year for claims under § 2607.[4]  12 U.S.C. § 2614. Plaintiffs' cause of action for statutory and actual damages under TILA must be brought within one year after the consummation of the loan transaction.  15 U.S.C. § 1640(e); *Merchants Mortgage & Trust Co. v. Dawe*, 754 P.2d 418 (Colo. App. 1987) (holding that a violation under TILA occurs, and the one-year statute of limitations begins to run, when credit is extended through consummation of the loan transaction).

Plaintiffs cause of action for unjust enrichment, being equitable in nature, is technically subject to a laches analysis rather than to a statutorily defined limitation period.  *See Interbank Investments, L.L.C. v. Vail Valley Consolidated Water Dist.*, 12 P.3d 1224, 1229-30 (Colo. App. 2000).  In *Interbank*, the court found that "[a]bsent extraordinary circumstances . . . a court will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character."  *Id*. (internal quotation marks and citations omitted).  Unjust enrichment is a form of quasi-contract but can be predicated on either tort or contract law.  *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008).  Plaintiffs assert that through "their misrepresentations, omissions, and other wrongful acts . . . Defendants, and each of them, were unjustly enriched at the expense of the Petitioner, and Petitioner was unjustly deprived, and is entitled to restitution in the amount of $762,604.86."  *See* Doc. 1, ¶¶ 507-509.  Giving Plaintiffs

---

[4] No private causes of action exist under 12 U.S.C. §§ 2603, 2604.  *Mayhew v. Cherry Creek Mortgage, Co., Inc.*, No. 09cv00219, 2010 WL 935674, at *7 n. 4 (D. Colo. Mar. 10, 2010) (stating that plaintiff's claim must be dismissed because "other provisions of RESPA explicitly provide private civil remedies, thus suggesting that Congress did not intend a private remedy for violations of Sections 2603 or 2604").  Pursuant to D.C.Colo.LCivR. 7.1(D) a copy of the *Mayhew* opinion is attached hereto as Exhibit D.

the benefit of the doubt, and if sounding in contract, this claim must have been brought within three years after it accrued.  C.R.S. § 13-80-101(1)(a).  But since the unjust enrichment claim seems to be most predicated on a RESPA § 2607 violation prohibiting kickbacks and unearned fees, the RESPA one-year statute of limitations is most analogous and should apply to this claim for unjust enrichment.  12 U.S.C. § 2614.

Similarly, Plaintiffs seeks further equitable relief in the form of rescission, declaratory relief, and quiet title.  Since these causes of action sound in contract as pleaded in the Complaint, these claims should have been commenced within three years after they accrued.  C.R.S. § 13-80-101(1)(a).

C.     All of the causes of action are time-barred.

All of the above causes of actions accrued when the residential loan was consummated on October 27, 2006.  None of the applicable statutes of limitation periods extend beyond three years.  Since this lawsuit was not filed until July 30, 2010, all of the causes of action are time barred, and Plaintiffs' Complaint should be dismissed with prejudice.

**III.     The doctrine of equitable tolling does not apply in this case.**

The Complaint alleges that due to the "Defendants' misrepresentations and failure to disclose" the doctrine of equitable tolling applies to Plaintiffs' claims under TILA and RESPA.  *See* Doc. 1, ¶¶ 383-416.  When applicable, the doctrine of equitable tolling allows plaintiffs to assert claims under TILA and RESPA "after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances."  *Heil v. Wells Fargo Bank*, 298 Fed. App'x. 703, 706 (10th Cir. 2008) (unpublished)[5] (quoting *Ellis v. Gen. Motors Acceptance*

---

[5] Pursuant to D.C.Colo.LCivR. 7.1(D) a copy of the *Heil* opinion is attached hereto as Exhibit E.

*Corp.*, 160 F.3d 703, 706-08 (11th Cir. 1998)); *see also Mayhew*, 2010 WL 935674, at *8 (applying doctrine to RESPA).  But it is "only available when [litigants] diligently pursue [their] claims and demonstrate … that the failure to timely file was caused by extraordinary circumstances beyond [their] control."  *Heil*, 298 Fed. Appx. at 707 (bracketing in original, internal citations omitted); *see also Perkins v. Johnson*, 551 F. Supp. 2d 1246 (D. Colo.  2008) ("the Tenth Circuit has noted that application of the doctrine is limited to rare and exceptional circumstances.").  Further, it is the plaintiff's burden to prove that the statute should be tolled. *Heil*, 298 Fed. Appx. 703, 707 (citing *Olson v. Fed. Mine Safety & Health Review Comm'n,* 381 F.3d 1007, 1014 (10th Cir. 2004).

In *Heil*, the plaintiffs failed to meet their burden because they were aware of defendant's alleged TILA violations for over a year before filing the complaint.  *Id.*  The Tenth Circuit affirmed the lower court's decision to deny equitable tolling even though the defendant allegedly refused continued requests to correct the violations up until the filing of the complaint.  *Id.* at 706 (citing *Stevens* and rejecting application of a "continuing violation" theory).  Similarly, the plaintiffs in *Perkins* were also unable to meet the high standard articulated by the Tenth Circuit. *See Perkins*, 551 F. Supp. 2d at 1253.  The court reasoned that "while they allege[d that] the complicated nature of the loan settlement documents prevented them from immediately discover[ing the violations], they [did] not allege that they were prevented from investigating and discovering [the violations] prior to the expiration of the statute of limitations."  *Id.* (further finding that the plaintiffs failed to allege that they were prevented from this discovery because of fraudulent concealment).

In this case, the Plaintiffs' Complaint is devoid of any facts that might satisfy their burden.  In fact, the Complaint does not set forth any facts that even imply that they were actively pursuing claims or the discovery of a violation.  *See id.* (stating that a plaintiff must demonstrate that it used "reasonable diligence in seeking to discover facts giving rise to a claim for relief.").  Nor do they allege that they were prevented from pursuing such an investigation.  Plaintiffs filed this action more than three years after the closing of the loan, and they have failed to present facts demonstrating that their claims should be equitably tolled.  Therefore, the doctrine of equitable tolling has no application, and Plaintiffs' claims under TILA and/or RESPA should be dismissed as time barred.

**IV.     The majority of Plaintiffs' causes of action are barred by the credit agreement statute of frauds.**

Colorado's credit agreement statute of frauds prohibits a debtor or creditor from filing or maintaining a claim "relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and signed by the party against whom enforcement is sought."  C.R.S. § 38-10-124(2).  A "credit agreement" is defined as:

> (I) A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;
>
> (II) Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraphs (I) and (III) of this paragraph (a); and
>
> (III) *Any representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, or collection of sums due under, any credit*

*agreements* defined in subparagraphs (I) and (II) of this paragraph (a).

C.R.S. § 38-10-124(a) (emphasis added).  BAC (as well as its predecessor-in-interest) is a "creditor" and Plaintiffs are "debtors" as those terms are defined by the statute.  C.R.S. § 38-10-124(1)(b)-(d).

Colorado courts are to construe the credit agreement statute of frauds broadly to effectuate its purposes.  *Schoen v. Morris*, 15 P.3d 1094, 1099 (Colo. 2000); *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 522 (Colo. App. 2007).  The credit agreement statute of frauds was enacted to "discourage lender liability litigation and to promote certainty into credit agreements involving sums of more than $25,000."  *Schoen*, 15 P.3d at 1098 (demonstrating that "the legislature hoped to curtail suits against lenders based on oral representations").

"The credit agreement statute of frauds expressly bars *all claims* relating to a credit agreement unless the credit agreement is in writing."  *Lang v. Bank of Durango*, 78 P.3d 1121, 1123 (Colo. App. 2003) (emphasis in original) (affirming trial court's decision to bar claims of negligent misrepresentation, fraud, and unjust enrichment based on the credit agreement statute of frauds).  Colorado case law, legislative history, and public policy "strongly disfavor *any* type of claim involving oral credit agreements."  *Id*. at 1124 (emphasis in original); *see also Schoen*, 15 P.3d at 1099 (applying public policy considerations in support of barring claims arising out of oral representations by operation of the credit agreement statute of frauds).

Here, Plaintiffs' causes of action for negligence, negligence per se, fraud, intentional infliction of emotional distress, unjust enrichment, and criminal conspiracy are barred by operation of the credit agreement statute of frauds.  The allegations that BAC (and others)

induced, conspired, colluded, misrepresented information, and intentionally inflicted emotional distress upon Plaintiffs are all based on oral representations or other conduct falling outside of the four corners of the applicable credit agreement.  Therefore, these claims should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**V.      There is no private cause of action for Plaintiffs' claims under sections 2603 and 2604 of RESPA.**

Plaintiffs' alleged claims under §§ 2603 and 2604 of RESPA fail because there are no such private causes of action available to them.  See Doc. 1, ¶¶ 337-347.  Congress enacted RESPA to help regulate the charges imposed by lenders, the disclosures related to loan transfers, and the use of kickbacks and other abusive practices.  See 12 U.S.C. § 2601 (congressional findings and purpose).  Each section under RESPA containing a private cause of action has an accompanying provision that describes the civil remedies and applicable statute of limitations.  See 12 U.S.C. 2601 et seq.; 12 U.S.C. §§ 2605(f), 2607(d)(2), (5), 2608(b), and 2614.  While damages are available for some RESPA provisions, "[t]here is no private right of action under RESPA for violations of Sections 2603 and 2604."  *Agbabiaka v. HSBC Bank USA Nat. Assn.*, No. C 09-05583 JSW, 2010 WL 1609974, *4 (N.D. Cal. Apr. 20, 2010).[6]

Sections 2603 and 2604 of RESPA govern what disclosures, including the HUD-1 Settlement Statement and special informational booklets, are required to be provided to the borrower.  12 U.S.C. §§ 2603, 2604.  The HUD-1 Settlement Statement "is a standard form that must be used for the statement of settlement costs in every federally related mortgage loan." *Martinez v. Wells Fargo Home Mortgage*, 598 F.3d 549, 557 (9th Cir. 2010).  RESPA Section 4

---

[6] Pursuant to D.C.Colo.LCivR. 7.1(D) a copy of the *Agbabiaka* opinion is attached hereto as Exhibit F.

requires lenders to "conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement[.]" 12 U.S.C. § 2603(a).  Yet the plain language of the statute does not provide a claim for relief for a violation of Section 4.  See e.g.  *Martinez*, 598 F.3d at 558 (holding that because the language of the statute reveals that "[n]o express cause of action was created by Congress under RESPA Section 4," the dismissal of plaintiff's claim must be affirmed); *Sanborn v. Am Lending Network*, 506 F. Supp. 2d 917, 923 (D. Utah 2007) (granting defendants judgment as a matter of law because of plaintiff's unsuccessful attempt to bootstrap a Section 2603 claim onto a Section that does provide a private cause of action); *Mayhew*, 2010 WL 935674, at *7 n.4 (stating that plaintiff's claim must be dismissed because "other provisions of RESPA explicitly provide private civil remedies, thus suggesting that Congress did not intend a private remedy for violations of Sections 2603 or 2604."); *Stith v. Thorne*, 488 F. Supp. 2d 534, 558-59 (E.D. Va.  2007) ("[T]he courts that have addressed the issue have concluded that Section 2603 does not provide a private cause of action for its violation.").

While the Complaint fails to identify specific provisions of RESPA that were violated, Plaintiffs allegations identifying "the apparent RESPA violations" all apply to disclosures that were allegedly defective or not timely presented to the Plaintiffs.  See Doc. 1, ¶¶ 338-347.  These alleged violations fall under §§ 2603 and 2604 of RESPA.  Plaintiffs have clearly failed to allege facts under a Section of RESPA that provide for a private cause of action.  Therefore, the Plaintiffs' allegation that the Defendants violated RESPA has no remedy at law, no basis in fact, and should be dismissed.

**VI.     The Complaint fails to state a plausible claim for relief under Section 2605 of RESPA.**

Section 2605 of RESPA governs the servicing of mortgage loans and the administration of escrow accounts.   12 U.S.C. § 2605.   Plaintiffs' alleged RESPA violations in the Complaint only extend to disclosure requirements under §§ 2603 and 2604.   Plaintiffs have not put BAC sufficiently on notice as to its purported RESPA § 2605 violation, nor has it alleged anything more than conclusory allegations throughout the Complaint.   Plaintiffs do not even specify who, or what entity, was servicing its loan.   Plaintiffs have also failed to offer any allegations showing that their claims under § 2605 of RESPA, if they exist, satisfy the three-year statute of limitation for this cause of action.   Therefore, Plaintiffs have failed to state a plausible claim for relief under § 2605 of RESPA, and such claim should be dismissed with prejudice.

**VII.     There is no private cause of action for Plaintiffs' rescission claim.**

Plaintiffs' claim for rescission[7] is unsupported by TILA.   TILA Section 1635 grants the borrower the right to rescind the loan transaction any time before the "third business day following the consummation of the transaction."  15 U.S.C. § 1635(a).   Under certain circumstances, this right to rescind extends up to three years after the date the transaction was consummated.   12 C.F.R. § 226.23(a)(3).   But these rescission rights are subject to a list of exempted transactions.   TILA Section 1635(e) provides: "This section does not apply to — (1) a residential mortgage transaction as defined in section 1602(w) of this title[.]"   The statute goes on to define such a transaction as follows: "a transaction in which a mortgage, deed of trust,

---

[7] The Complaint makes only two references to rescission, and each reference is entirely conclusory with no supporting facts. *See* Doc. 1, ¶¶ 513-14 ("Petitioner's claims for rescission and fraud are meritorious"), and ¶ 670 (seeking "rescission of the loan contract and restitution by Defendants to Petitioner according to proof at trial").   Accordingly, the Complaint simply fails to state any plausible claim for rescission.

purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w). Indeed, the statutory right of rescission, whether three days or three years, is not applicable to a residential mortgage transaction. 12 C.F.R. 226.23(f).

In *Betancourt v. Countrywide Home Loans, Inc.*, the court held that defendants were entitled to summary judgment on plaintiff's claim for rescission because "there is no statutory right of rescission under [1635(e)] where the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the customer resides or expects to reside." 344 F. Supp. 2d 1253, 1261 (D. Colo. 2004). The court went on to explain that 1635(e) was meant to be a "federal remedy … to protect consumers against surprise and oppression stemming from mortgages unwittingly executed on homes to pay for often questionable 'home improvements.'" *Id.* 1260-61 (citing *Heuer v. Forest Hill State Bank*, 728 F. Supp. 1199, 1200-01 (D. Md. 1989)). Further, "Congress did not intend the recission [sic] obligation (or disclosure of it) to extend to a loan whose predominant purpose is to enable the borrower to acquire or erect, on her property, a new residential structure." *Id.* Similarly, in *Mayhew*, the court held that the plaintiff's claim was properly dismissed as a transaction exempt from Section 1635 because his loan was a residential mortgage transaction. 2010 WL 935674, at *10.

Here, Plaintiffs admittedly obtained the loan for the purpose of purchasing the home as their primary residence. *See* Doc. 1, ¶¶ 15-16. Because the loan in question was for a residential mortgage transaction, as defined in TILA, it is exempt from the rescission provision. Therefore, and if a claim for rescission has been properly pleaded, it should be dismissed with prejudice.

**VIII.   Plaintiffs' claim seeking to quiet title to the Property, along with their claim for declaratory relief seeking to identify the holder of the promissory note and whether the power of sale contained in the Deed of Trust is enforceable, are illogical and fail to state plausible claims for relief.**

Plaintiffs currently hold title to the Property.  Yet in the Complaint, Plaintiffs assert a claim to quiet title to the Property on the basis that the power of sale clause contained in the Deed of Trust they signed on October 27, 2006 is of no force or effect.  *See* Doc. 1, ¶¶ 515-517. Plaintiffs also seek declaratory relief seeking to learn who is the holder of the promissory note, and "whether the Deed of Trust (Mortgage) secures any obligation of the Petitioner. . . ."  *See* Doc. 1, ¶¶ 195-97.  These claims is are illogical and unintelligible and fail to state appropriate claims for relief.

Here, BAC is the holder of the promissory note.  The Plaintiffs have defaulted under the promissory note and the Deed of Trust contains a power of sale clause.  Therefore, BAC is entitled to foreclose on the Property, and has obtained an order authorizing such a sale from the state court.  Plaintiffs' contentions regarding the enforceability of the power of sale clause contained in the Deed of Trust, along with its claim for declaratory relief seeking to learn who holds the promissory note and whether the deed of trust secures any property belonging to them, provide no basis for relief and must be dismissed..

**IX.   Plaintiffs' breach of fiduciary claim fails to state a plausible claim for relief.**

Plaintiffs claim that BAC, and/or other unnamed defendants, breached a fiduciary duty that was owed to them. *See* Doc. 1, ¶¶ 543-554.  But under Colorado law,  "no per se fiduciary relationship exists by virtue of the borrower-lender relationship between a bank or a bank's officer and a customer of the bank."  *First Nat. Bank of Meeker v. Theos*, 794 P.2d 1055, 1060 (Colo. App. 1990).  A fiduciary duty may arise "from a business or confidential relationship

which impels or induces one party to relax the care and vigilance it would and should have ordinarily exercised," but it does not exist simply because one party is a borrower and the other is a lender.  *Id.*

The Plaintiffs have the burden of showing that such a confidential relationship existed. *Id.* at 1061.  The Plaintiffs must show, by a preponderance of the evidence, "that a special trust or confidence was in fact reposed, that its reposition was justifiable, and that the other party either invited or ostensibly accepted the trust imposed."  *Id.*

Plaintiffs have not met their burden of establishing that a confidential relationship exists. In fact, Plaintiffs' breach of fiduciary claim contains nothing more than conclusory allegations and a formulaic recitation of the elements.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009)). Therefore, Plaintiffs' claim for breach of fiduciary duty may be properly dismissed with prejudice.

**X.    The tort claims for negligence, negligence per se, and intentional infliction of emotional distress should be dismissed because they arise out of, and are not independent of, the duties and requirements encompassed in the loan documents.**

In support of their claims for negligence and/or negligence per se, the Plaintiffs argue that "Defendants owed a general duty of care with respect to Petitioners, particularly concerning their duty to properly perform due diligence as to the loans. . . ."  *See* Doc. 1, ¶¶ 556-57.  But there is no such general duty of care, nor is there any duty independent of those created through the contractual loan documents.  *Centennial Square, Ltd. v. Resolution Trust Co.*, 815 P.2d 1002, 1004 (Colo. App. 1991).  In *Centennial Square*, the Colorado Court of Appeals affirmed the trial

court's decision to dismiss the borrowers' claims for negligence and breach of the implied covenant of good faith and fair dealing because "the duties tortiously breached were created by a contractual relationship and the facts supporting the tort claims are the same as those supporting the contract claims." *Id.* Consequently, no independent tort action can exist for the alleged breach of such contractual duties. *Id.* As in *Centennial Square*, Plaintiffs claims for negligence and negligence per se are based on a contractual relationship, cannot be asserted as independent torts, and therefore should be dismissed with prejudice.

Plaintiffs also assert a claim against Defendants for the intentional infliction of emotional distress through conduct that "was extreme and outrageous and not to be tolerated by civilized society." *See* Doc. 1, ¶¶ 641-45. Assuming that Plaintiffs are including BAC in this claim against the unidentified group of defendants, the claim is completely conclusory. There are no allegations of specific facts regarding what such conduct was extreme and outrageous, nor is there any indication as to who behaved in this manner. This does not suffice. *Bixler*, 596 F.3d at 756. Such a claim should also be dismissed with prejudice for failing to state a plausible claim for relief.

## CONCLUSION

The Williams' Complaint fails to state any plausible claim for which relief can be granted. As shown in the foregoing authorities and discussion: (1) Mr. Williams is not a real party in interest and therefore has no standing to assert any of these claims that are property of his bankruptcy estate and can only be asserted by the bankruptcy trustee, (2) the applicable statutes of limitations bar the causes of action, whether brought by Ms. Williams or the bankruptcy trustee, (3) the doctrine of equitable tolling does not apply to the TILA or RESPA

causes of action in this case, (4) Plaintiffs' claims for negligence, negligence per se, fraud, intentional infliction of emotional distress, unjust enrichment, and criminal conspiracy are barred by operation of the credit agreement statute of frauds, (5) there are no private causes of action for Plaintiffs' RESPA claims under §§ 2603 and 2604, nor is there a private cause of action for Plaintiffs' rescission claim, (6) Plaintiffs claims for breach of fiduciary duty, quiet title, declaratory relief, violation of § 2605 of RESPA, and intentional infliction of emotional distress are all unintelligible and supported only by conclusory allegations and fail to state plausible claims for relief, and (7) since there are no duties owed by BAC to Plaintiffs in tort that are independent of the duties imposed through the loan documents, Plaintiffs claims for negligence and negligence per se should be dismissed.

Therefore, BAC respectfully requests that the Court grant its Motion and dismiss the Plaintiffs' Complaint with prejudice pursuant to Fed.R.Civ.P. 12(b)(6), and awarding it such other further relief as the Court deems necessary.

Dated:  October 5, 2010.

Respectfully submitted,

*s/ Sean M. Hanlon*
J. Kevin Bridston
Sean M. Hanlon
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Telephone:  (303) 295-8000
Fax:  (303) 295-8261
kbridston@hollandhart.com
smhanlon@hollandhart.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on October 5, 2010, I caused to be served a copy of the foregoing document, along with copies of the exhibits, to the following by:

☒  U.S. Mail, postage prepaid
☐  Hand Delivery
☐  Fax
☐  Electronic Service by LexisNexis File & Serve

Carl L. and Jessica A. Williams
2364 Xanthia Way
Denver, CO 80238

*s/ Sean M. Hanlon*
Sean M .Hanlon

4913540_2.DOCX